UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

UNITED STATES OF AMERICA

vs.                                      Case Nos.:  3:17cr29/MCR/EMT
                                                     3:19cv3832/MCR/EMT

DANNY RAY MURPHY
        a/k/a/ "Mr. Duckblue"
_____/

## REPORT AND RECOMMENDATION

This matter is before the court on Defendant Danny Ray Murphy's "Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody" (ECF No. 84).   The Government filed a response (ECF No. 89), to which Defendant Murphy filed replies (*see* ECF Nos. 90, 91).[1]   The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters.   *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b).   After a careful review of the record and the arguments presented, the undersigned recommends that the section 2255 motion be denied without a hearing.   *See* Rules 8(a) and (b), Rules Governing Section 2255 Proceedings.

---

[1] Defendant Murphy filed two separate replies, the first one typewritten (ECF No. 90) and the second one handwritten (ECF No. 91).  The handwritten reply adds legal citations not provided in the first reply.

## PROCEDURAL BACKGROUND

Danny Ray Murphy (Murphy) was charged in a three-count indictment with conspiracy to receive and possess child pornography, receipt of child pornography, and possession of child pornography (ECF No. 1).   The Government's evidence against Murphy was gathered from surveillance operations and forensic results of digital device searches.   Briefly stated, Murphy conspired with another individual to receive and possess graphic images of the other individual's sexual assault of a three-year old boy (ECF Nos. 1, 53, 70–73, 81–82).

Murphy proceeded to a jury trial, represented by court-appointed counsel Donald Sheehan (ECF Nos. 70–73, 76).   Murphy testified on his own behalf as the only defense witness (*id*. at 213–56).   The jury found Murphy guilty as charged, with certain additional findings—namely, conspiracy to both receive or attempt to receive and possess or attempt to possess child pornography, receipt of child pornography, and possession of child pornography involving a prepubescent minor (*see* ECF No. 37, Verdict Form).

Murphy's Presentence Investigation Report (PSR) calculated his total offense level as 34 and his criminal history category as I, yielding a sentencing guidelines range of 151 to 188 months (ECF No. 53).   At sentencing, the district court

Case Nos.: 3:17cr29/MCR/EMT; 3:19cv3832/MCR/EMT

overruled a defense objection to the obstruction enhancement, stating it had "little

trouble finding that Mr. Murphy committed perjury on the witness stand" during his

trial, in an unsuccessful attempt to persuade the jury that he was not guilty (ECF No.

72 at 6–7).    More significantly, the court sustained the Government's objection to

the PSR's omission of the guidelines cross reference in U.S.S.G. § 2G2.2(c)(1)[2]

(*see* ECF No. 49; ECF No. 73 at 7–28).    Murphy's re-calculated total offense level

became 43, which, under the sentencing guidelines, calls for a sentence of life

imprisonment, irrespective of the criminal history category (ECF No. 58 at 4; ECF

No. 73 at 28–29).    However, because Counts One and Two each carried twenty-

year statutory maximum terms of imprisonment, the total maximum sentence the

court could impose was 480 months (by imposing consecutive, maximum terms on

---

[2] The cross reference provides as follows:

> If the offense involved causing, transporting, permitting, or offering or seeking by notice or advertisement, a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct, apply § 2G2.1 (Sexually Exploiting a Minor by Production of Sexually Explicit Visual or Printed Material; Custodian Permitting Minor to Engage in Sexually Explicit Conduct; Advertisement for Minors to Engage in Production), if the resulting offense level is greater than that determined above.

U.S.S.G § 2G2.2(c)(1).

Case Nos.: 3:17cr29/MCR/EMT; 3:19cv3832/MCR/EMT

Counts One and Two) (ECF No. 73 at 29–30).[3]    The court imposed the maximum sentence of 480 months, noting it could not imagine, and had never seen, "a more egregious or heinous case of receipt of child pornography" (*id.* at 59).[4]

Murphy appealed.    He challenged the district court's application of the cross reference, arguing he did not produce or cause the production of child pornography. He also asserted his sentence was substantively unreasonable. The Eleventh Circuit Court of Appeals rejected his arguments and affirmed his sentence (ECF No. 81).

Murphy timely filed the instant motion, in which he raises thirteen grounds for relief.    The Government opposes the motion in its entirety.

## STATEMENT OF FACTS

The facts of this case can generally be found in the indictment, trial and sentencing hearing transcripts, PSR, judgment and statement of reasons, and Eleventh Circuit's opinion on appeal.    A description of the core facts underlying the offense conduct is not necessary for the resolution of Murphy's claims and will

---

[3] As the district court noted at the sentencing hearing, "Count Three [was] subsumed into Count Two" and dismissed (ECF No. 73 at 2, 60).    Defendant thus was sentenced only on Counts One and Two.

[4] The court also stated that if it had "erred as a matter of law in applying the cross reference," the court would have imposed a total sentence of 360 months—which the court believed to be "approximately . . double the guideline range" (ECF No. 73 at 59–61).

not be set forth herein.   In sum, Murphy conspired with another individual via electronic means to receive and possess graphic videos and images of the rape and sexual assault of a three-year old boy—the son of the person with whom Murphy communicated.   The communications took place during a two-month period, between November 2016 and January 2017.   Law enforcement first arrested the person who created the videos and then assumed his identity and continued communicating with Murphy.

ANALYSIS

General Standard of Review

"Section 2255 does not provide a remedy for every alleged error in conviction and sentencing."   *Spencer v. United States*, 773 F.3d 1132, 1138 (11th Cir. 2014). A prisoner is entitled to relief under section 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack.   *See* 28 U.S.C. § 2255(a).   "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'"   *Lynn v. United States*,

365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted). The "fundamental miscarriage of justice" exception recognized in *Murray v. Carrier*, 477 U.S. 478, 496 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent . . . ."

The law is well established that a district court need not reconsider issues raised in a section 2255 motion that have been resolved on direct appeal. *Stoufflet v. United States*, 757 F.3d 1236, 1239 (11th Cir. 2014); *Rozier v. United States*, 701 F.3d 681, 684 (11th Cir. 2012); *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000); *Mills v. United States*, 36 F.3d 1052, 1056 (11th Cir. 1994). Once a matter has been decided adversely to a defendant on direct appeal, it cannot be re-litigated in a collateral attack under section 2255. *Nyhuis*, 211 F.3d at 1343 (internal quotation marks omitted). Broad discretion is afforded to a court's determination of whether a particular claim has been previously raised. *Sanders v. United States*, 373 U.S. 1, 16 (1963) ("identical grounds may often be proved by different factual allegations . . . or supported by different legal arguments . . . or couched in different language . . . or vary in immaterial respects").

Because a motion to vacate under section 2255 is not a substitute for direct appeal, issues which could have been raised on direct appeal are generally not

actionable in a section 2255 motion and will be considered procedurally barred. *Granda v. United States,* 990 F.3d 1272, 1286 (11th Cir. 2021) (citation omitted); *Lynn*, 365 F.3d at 1234–35; *Bousley v. United States*, 523 U.S. 614, 621 (1998); *McKay v. United States*, 657 F.3d 1190, 1195 (11th Cir. 2011).    An issue is "'available' on direct appeal when its merits can be reviewed without further factual development." *Lynn*, 365 F.3d at 1232 n.14 (quoting *Mills v. United States*, 36 F.3d 1052, 105 (11th Cir. 1994)).    Absent a showing that the ground of error was unavailable on direct appeal, a court may not consider the ground in a section 2255 motion unless the defendant establishes either (1) cause for not raising the ground on direct appeal *and* actual prejudice resulting from the alleged error, or, alternatively, (2) he is "actually innocent." *Granda*, 990 F.3d at 1286; *Lynn*, 365 F.3d at 1234; *Bousley*, 523 U.S. at 622 (citations omitted).

To show cause sufficient to excuse a procedural default, a defendant must show that "some objective factor external to the defense prevented [him] or his counsel from raising his claims on direct appeal and that this factor cannot be fairly attributable to [defendant's] own conduct." *Lynn*, 365 F.3d at 1235.    A meritorious claim of ineffective assistance of counsel can constitute cause. *See Nyhuis*, 211 F.3d at 1344.    Actual prejudice is more than just the possibility of

prejudice; "it requires that the error worked to the petitioner's actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Granda,* 990 F.3d at 1288 (internal quotation marks omitted).

Ineffective assistance of counsel claims generally are not cognizable on direct appeal and are properly raised by a section 2255 motion regardless of whether they could have been brought on direct appeal. *Massaro v. United States*, 538 U.S. 500, 503 (2003); *see also United States v. Franklin*, 694 F.3d 1, 8 (11th Cir. 2012); *United States v. Campo*, 840 F.3d 1249, 1257 n.5 (11th Cir. 2016). To prevail on a claim of ineffective assistance of counsel, a defendant must show (1) his attorney's representation fell below "an objective standard of reasonableness," and (2) a reasonable probability exists that, but for counsel's unprofessional conduct, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "The burden of persuasion is on a section 2255 petitioner to prove, by a preponderance of the competent evidence, both that counsel's performance was unreasonable, and that [ ]he was prejudiced by that performance." *Demar v. United States*, 228 F. App'x 940, 950 (11th Cir. 2007) (internal quotation marks, brackets, and citations omitted)[5]; *see also Johnson v. Alabama*, 256 F.3d

---

[5] Neither the Federal Rules nor the Local Rules of this Court proscribe the citation of unpublished

1156, 1176 (11th Cir. 2001) ("The petitioner bears the burden of proof on the 'performance' prong as well as the 'prejudice' prong of a *Strickland* claim, and both prongs must be proved to prevail.").    In applying *Strickland*, the court may dispose of an ineffective assistance claim if a defendant fails to carry his burden on either of the two prongs.    *Strickland*, 466 U.S. at 697; *Brown v. United States*, 720 F.3d 1316, 1326 (11th Cir. 2013); *Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000) ("[T]he court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.").

In determining whether counsel's conduct was deficient, this court must, with much deference, consider "whether counsel's assistance was reasonable considering all the circumstances."    *Strickland*, 466 U.S. at 688; *see also Dingle v. Sec'y for Dep't of Corr.*, 480 F.3d 1092, 1099 (11th Cir. 2007).    Reviewing courts "must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance."    *Strickland*, 466 U.S. at 689; *see also Chandler v. United States*, 218 F.3d 1305, 1315–16 (11th Cir. 2000) (discussing presumption of reasonableness of counsel's conduct); *Lancaster v. Newsome*, 880 F.2d 362, 375

---

opinions.  *See, e.g.,* Fed. R. Civ. P. 32.1(a).    The Eleventh Circuit's rules provide that "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority."    11th Cir. R. 36-2.

(11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation"). Additionally, counsel's performance must be evaluated with a high degree of deference and without the distorting effects of hindsight. *Strickland*, 466 U.S. at 689. To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." *Hollis v. United States*, 958 F.3d 1120, 1122 (11th Cir. 2020) (citation omitted); *Chandler*, 218 F.3d at 1315. The fact that a particular defense ultimately proved to be unsuccessful does not, alone, demonstrate counsel's ineffectiveness. *Chandler*, 218 F.3d at 1314. "Counsel is not required to present every nonfrivolous defense," because "[s]tacking defenses can hurt a case." *Id.* at 1315. Rather, "[g]ood advocacy requires winnowing out some arguments . . . to stress others." *Id.* When reviewing the performance of an experienced trial counsel, the presumption that counsel's conduct was reasonable is even stronger, because "[e]xperience is due some respect." *Id.* at 1316 n.18.

To establish prejudice, a defendant must show that, but for counsel's deficient performance, the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694; *Jenkins v. Comm'r, Ala. Dep't of Corr.,* 963 F.3d 1248 (11th Cir. 2020) (quoting *Harrington v. Richter*, 562 U.S. 86, 112 (2011)). For the

court to focus merely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him." *Lockhart v. Fretwell*, 506 U.S. 364, 369–70 (1993); *Allen v. Sec'y, Fla. Dep't of Corr.*, 611 F.3d 740, 754 (11th Cir. 2010). A defendant therefore must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Lockhart*, 506 U.S. at 369 (quoting *Strickland*, 466 U.S. at 687). Or in the case of alleged sentencing errors, a defendant must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been less harsh due to a reduction in the defendant's offense level. *Glover v. United States*, 531 U.S. 198, 203–04 (2001). A significant increase in sentence is not required to establish prejudice, as "any amount of actual jail time has Sixth Amendment significance." *Id.* at 203. To demonstrate prejudice in the context of an appeal, the arguments the defendant alleges his counsel failed to raise must have been significant enough to have affected the outcome of the appeal. *Miller v. Dugger*, 858 F.2d 1536, 1538 (11th Cir. 1988).

In a collateral proceeding, such as this, it is the defendant's burden to provide factual support for his contentions regarding counsel's performance. *See Smith v. White*, 815 F.2d 1401, 1406–07 (11th Cir. 1987). Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the *Strickland* test. *See Boyd v. Comm'r, Ala. Dep't of Corr.*, 697 F.3d 1320, 1333–34 (11th Cir. 2012); *Dale v. United States*, 809 F. App'x 727, 728 (11th Cir. 2020) (citing *Wilson v. United States*, 962 F.2d 996, 998 (11th Cir. 1992)); *Stano v. Dugger*, 901 F.2d 898, 899 (11th Cir. 1990) (citing *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)). A defendant must identify the errors or omissions of which he complains and explain how they affected the outcome of the proceedings. *Boyd*, 697 F.3d at 1333. A silent record is not sufficient to disprove the strong and continuing presumption of effective representation. "[W]here the record is incomplete or unclear" about counsel's actions, the court "will presume that he did what he should have done, and that he exercised reasonable professional judgment." *Harvey v. Warden, Union Corr. Inst.,* 629 F.3d 1228, 1239 (11th Cir. 2011) (quoting *Chandler*, 218 F.3d at 1314 n.15). Where "the evidence does not clearly explain what happened, or more accurately why something failed to happen, the party with the burden loses." *Romine v. Head*, 253 F.3d 1349, 1357 (11th Cir. 2001); *see also Williams v. Head*,

185 F.3d 1223, 1227–28 (11th Cir. 1999) (concluding that where, due to the passage of time, trial counsel who is charged with rendering ineffective assistance does not recall all that he did or many of his thought processes relating to the trial, the court will presume counsel did what he should have done and exercised reasonable professional judgment); *see also Wood v. Allen*, 542 F.3d 1281, 1305 (11th Cir. 2008) (holding that where defendant does not rebut the presumption that counsel's decision not to present certain evidence was reasonable, his ineffective assistance of counsel claim must be denied).

Furthermore, counsel is not constitutionally deficient for failing to preserve or argue a meritless claim.   *Hollis v. United States,* 958 F.3d 1120, 1124 (11th Cir. 2020) (counsel not constitutionally ineffective for failing to raise meritless objection to use of prior drug convictions as predicate offenses under ACCA); *Denson v. United States*, 804 F.3d 1339, 1342 (11th Cir. 2015) (citing *Freeman v. Att'y Gen., Fla.*, 536 F.3d 1225, 1233 (11th Cir. 2008) (counsel not ineffective for failure to raise objection that was counter to the express language of the guidelines commentary)).   This is true regardless of whether the issue is a trial or sentencing issue.   *See, e.g.*, *Sneed v. Fla. Dep't of Corr.*, 496 F. App'x 20, 27 (11th Cir. 2012) (failure to preserve meritless *Batson* claim not ineffective assistance of counsel);

*Lattimore v. United States*, 345 F. App'x 506, 508 (11th Cir. 2009) (counsel not ineffective for failing to make meritless objection to obstruction enhancement); *Brownlee v. Haley*, 306 F.3d 1043, 1066 (11th Cir. 2002) (counsel not ineffective for failing to raise issues clearly lacking in merit); *Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001) (counsel not ineffective for failing to object to "innocuous" statements by prosecutor or accurate statements by prosecutor about effect of potential sentence).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail . . . are few and far between." *Chandler*, 218 F.3d at 1313. This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted. *Dingle*, 480 F.3d at 1099; *Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000). Lawyers in every case could have done something more or different, and the issue is not what is possible but only what is constitutionally compelled. *Chandler*, 218 F.3d at 1313. "Even if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was 'so patently unreasonable that

no competent attorney would have chosen it.'"    *Dingle*, 480 F.3d at 1099 (quoting

*Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983)); *Sylvin v. United

States*, 679 F. App'x 975, 976 (11th Cir. 2017).    As the Sixth Circuit has framed

the issue, the question is not whether counsel was inadequate but, rather, whether

counsel's performance was so manifestly ineffective that "defeat was snatched from

the hands of probable victory."    *United States v. Morrow*, 977 F.2d 222, 229 (6th

Cir. 1992).    Regardless of how the standard is framed, under the prevailing case

law it is abundantly clear that a moving defendant has a high hurdle to overcome to

establish a violation of his constitutional rights based on his attorney's performance.

A defendant's belief that a certain course of action counsel failed to take might have

helped his case does not direct a finding that counsel was *constitutionally ineffective*

under the standards set forth above.

An evidentiary hearing is unnecessary when "the motion and files and records

conclusively show that the prisoner is entitled to no relief."    *See* 28 U.S.C.

§ 2255(b); *Rosin v. United States*, 786 F.3d 873, 877 (11th Cir. 2015); *Gordon v.

United States*, 518 F.3d 1291, 1301 (11th Cir. 2008).    Not every claim of

ineffective assistance of counsel warrants an evidentiary hearing.    *Gordon*, 518

F.3d at 1301 (citing *Vick v. United States*, 730 F.2d 707, 708 (11th Cir. 1984)).    To

be entitled to a hearing, a defendant must allege "reasonably specific, non-conclusory facts that, if true, would entitle him to relief." *Griffith v. United States*, 871 F.3d 1321, 1329 (11th Cir. 2017). A hearing is not required on frivolous claims, conclusory allegations unsupported by specifics, or contentions that are wholly unsupported by the record. *See Winthrop-Redin v. United States*, 767 F.3d 1210, 1216 (11th Cir. 2014) (explaining that "a district court need not hold a hearing if the allegations [in a section 2255 motion] are . . . based upon unsupported generalizations") (internal quotation marks omitted); *Peoples v. Campbell*, 377 F.3d 1208, 1237 (11th Cir. 2004). And affidavits that amount to nothing more than conclusory allegations do not warrant a hearing. *Lynn*, 365 F.3d at 1239. Finally, disputes involving purely legal issues can be resolved by the court without a hearing.

<u>Murphy's Claims</u>

The thirteen claims Murphy raises can be divided into three general subject areas: (1) claims directly asserting ineffective assistance of counsel (three claims); (2) claims alleging violations of Murphy's rights by law enforcement (six claims); and (3) claims alleging procedural and trial errors (four claims). Each claim will be discussed in turn in accordance with the legal standards set forth above and according to the general subject area in which the claim falls.

<u>Ineffective Assistance of Counsel</u>

In Grounds One, Two, and Five, Murphy alleges trial counsel was constitutionally ineffective.  As set forth below, the motion lacks the specificity necessary for a meaningful analysis of such claims and fails to establish ineffective assistance under *Strickland*.

In Ground One, Murphy claims counsel failed to act "as a guaranteed representative as charged in 18 U.S.C. § 3006," which prejudiced Murphy and "render[ed] the verdict suspect" (ECF No. 84 at 4).   Murphy offers nothing to support this claim, other than a citation to the Criminal Justice Act (CJA), 18 U.S.C. § 3006A.   The CJA provides for the appointment of counsel for any person financially unable to obtain adequate representation but does not set forth the standards regarding constitutionally effective representation (*id*.).   Murphy thus clearly has stated no claim on which relief is warranted with regard to Ground One.

In Ground Two, Murphy asserts counsel failed to comply with the requirements of "18 U.S.C. § 3006A(3)(c) [sic]" (ECF No. 84 at 5).   Specifically, Murphy contends counsel failed "to take care of any ancillary issues," such as notifying "the State of Florida financial services" about Murphy's incarceration in

order to stop any child support collection.[6]    Such ancillary tasks do not fall within the scope of a court-appointed, criminal defense attorney's duties to his client under the CJA or otherwise, and they are not "appropriate to the proceedings" for which counsel was appointed here.    Hence, counsel's failure to complete such tasks does not render counsel's performance constitutionally ineffective.

In Ground Five, Murphy asserts (for the first time) that counsel's omissions violated his Sixth Amendment right to effective assistance of counsel (ECF No. 84 at 11).    Murphy suggests counsel should have filed a pre-trial motion to suppress unspecified evidence; claims "counsel failed to exercise the skill, judgment, and diligence of a reasonable competent defense attorney"; and requests that the court "vacate and expunge" his conviction (*id*.).    Murphy offers nothing further in support of these claims.    In his reply brief, however, Murphy raises for the first time several substantive issues underlying his ineffective assistance of counsel claims.

---

[6] In light of Murphy's contention, he presumably relies on subsection (c) of section 3006A, which provides in part that "[a] person for whom counsel is appointed shall be represented at every stage of the proceedings from his initial appearance before the United States magistrate judge or the court through appeal, *including ancillary matters appropriate to the proceedings*." 18 U.S.C. § 3006A(c) (emphasis added).

Case Nos.: 3:17cr29/MCR/EMT; 3:19cv3832/MCR/EMT

It is well settled that issues not raised in an initial section 2255 motion can be deemed waived.   *See, e.g., McKiver v. Sec'y, Fla. Dep't of Corr.,* 991 F.3d 1357, 1364 n.1 (11th Cir. 2021) (arguments raised for the first time in a party's reply brief are waived); *United States v. Herget,* 585 F. App'x 948, 950 (10th Cir. 2014) (ineffective assistance of counsel claim presented for first time in section 2255 reply waived); *United States v. Cervantes*, 132 F.3d 1106, 1111 (5th Cir. 1998) (district court does not abuse its discretion in refusing to consider new issues raised in a section 2255 reply brief after the government filed its response) (citations omitted); *United States v. Castleberry*, No. 3:14CR59/RV/EMT, 2020 WL 7753721, at *10 (N.D. Fla. Nov. 18, 2020), *report and recommendation adopted*, No. 3:14CR59/RV/EMT, 2020 WL 7711820 (N.D. Fla. Dec. 28, 2020) (noting that, "[b]ecause Castleberry did not raise the issue of IAAC in his section 2255 motion, it is deemed waived," but alternatively denying claim on the merits); *Wallace v. United States*, Civ. Case No. 8:13cv2262-T-24MAP; Cr. Case No. 8:11cr287-T-24MAP, 2014 WL 12605465, at *5 (M.D. Fla. Jan. 13, 2014) (finding that because petitioner did not raise ineffective assistance of appellate counsel in his section 2255 petition and, instead, raised it for the first time in his reply, it was deemed waived and not cognizable on collateral review) (citing *United States v. Otalvora,* Nos. 93

CR 096, 95 C 0157, 1995 WL 151768, at *1 (N.D. Ill. Apr. 4, 1995) (arguments presented for the first time in a section 2255 reply brief are waived)); *see also United States v. Magluta*, 418 F.3d 1166, 1185–86 (11th Cir. 2005) (in the context of a direct appeal, issues not raised until the reply brief will not be considered); *Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994) (in the context of a habeas petition filed under section 2254, a traverse is not the proper pleading to raise additional grounds for relief, as the state is not properly advised of additional claims and thus is unable to answer). Indeed, Rule 2(b)(1) of the Rules Governing Section 2255 Proceedings provides that the motion must "specify all the grounds for relief available to the moving party." *Id.* This rule supports judicial economy and gives the Government the opportunity to respond to a litigant's claims fully and expeditiously. Accordingly, Murphy's additional/expanded claims set forth in his reply are not cognizable for purposes of his section 2255 motion.

Even if the claims presented in Murphy's reply were not deemed waived, Murphy has not met his burden of showing a violation of his right to constitutionally effective representation under *Strickland.*

Murphy first asserts in his reply that counsel was "unsure and unaware on what to do, when properly to do it, and at what stage of the proceedings it needed

done" (ECF No. 91 at 2).    Murphy references the court's discussion with counsel during the jury charge conference, during which the court admonished counsel for not submitting a proposed jury instruction earlier in the proceedings (ECF No. 72 at 3–4, 8).    Murphy has not shown prejudice.    Indeed, despite the late presentation of the proposed instruction, the court advised that it was <u>not</u> "going to strike or not accept" the proposed instruction, and the court allowed counsel to present his argument on the propriety of the untimely submitted instruction, to which the Government ultimately conceded (*id.* at 3–7).    Similarly, at the beginning of the trial, the court informed counsel that an objection he sought to raise should have been the subject of a motion in limine, but the court nonetheless considered the merits of the objection (ECF No. 70 at 5–7).    Thus, even if trial counsel performed deficiently, as Murphy contends, Murphy was not prejudiced by the deficient performance.

Murphy also faults trial counsel for failing to file a motion to suppress, alleging there were discrepancies in the "receipt of items seized, and chain of custody form" that he pointed out to counsel, and he presumably contends the discrepancies were a valid basis on which to seek suppression of certain items of evidence (*see* ECF No. 91 at 2).    Murphy submitted two virtually identical Custody

Receipts (ECF No. 85-1 at 7–8).    One receipt lists four items of seized property—

thumb drives, an Apple watch, "various cords," and documents—and Murphy says

this receipt was provided to him at the time a search warrant for the search of his

truck was executed (*id*. at 8; ECF No. 91 at 5).[7]    The other receipt lists a fifth item,

an Apple iPhone, and Murphy says this receipt was "submitted to the court" (ECF

No. 85-1 at 7–8; ECF No. 91 at 5–6).    The first receipt bears the signature of one

law enforcement officer who was involved in the seizure of items; the other receipt

bears the signature of two such law enforcement officers (*see id*.).    Neither receipt

contains identifying serial numbers or detailed descriptions of the items seized—

another circumstance with which Murphy takes issue (ECF No. 91 at 5).    Murphy

states he advised counsel of his concerns regarding the receipts, and counsel

responded by stating that the Government "could prove it's your phone" and there

was nothing counsel could do (ECF No. 91 at 3).    Murphy appears to generally

contend that suppression of the phone might have helped his case (although he

---

[7] There are two search and seizure warrants relevant to this case.    The warrant in Case No. 3:17mj10 authorized a search of Murphy's 1995 GMC Sierra truck, and the warrant in Case No. 3:17mj11 authorized a search of Murphy's person (ECF No. 89-1 at 4, 9).    Each was signed on the same date and time by the undersigned (*id*.).    Attachment A to each warrant, which provides the description of the vehicle/person to be searched, was identical, listing both Murphy's truck and Murphy (*id*. at 5, 10).

mistakenly claims that the phone was law enforcement's "sole piece of evidence used to convict" him) (ECF No. 91 at 6).

Counsel is not constitutionally ineffective for failing to file a motion to suppress when no viable claim under the Fourth Amendment exits. *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986); *Simons v. United States*, 683 F. App'x 882, 886 (11th Cir. 2017). Murphy does not provide any viable basis for a motion to suppress, nor is one apparent from a review of Murphy's filings. The fact that an additional item of evidence was listed on a search warrant inventory following a search, that more than one law enforcement officer seized evidence during a search, or that an inventory was updated, does not render the seized evidence inadmissible or show a violation of the Fourth Amendment that would warrant suppression of evidence. What is more, the search warrant returns provided to the undersigned following execution of the search warrants show that the four items listed on the first receipt were seized from Murphy's truck (*see* Case No. 3:10mj10, ECF No. 6 at 1–2), and that the fifth item, the iPhone, was seized from Murphy's person (*see* Case No. 3:17mj11, ECF No. 6 at 1–2). The returns thus indicate that the latter receipt (i.e., the receipt that Murphy says was "submitted to the court") merely reflects— and advised Murphy of—*all* items taken pursuant to the separate search warrants,

whereas the first receipt reflects only those items taken during the search of Murphy's truck.   Counsel thus did not perform deficiently by failing to file a motion to suppress, as no good faith basis for filing such a motion existed.

Murphy also notes in his reply that he conducted a "Lexis/Nexis" search and discovered that between 2015 and 2019, his court-appointed counsel "ha[d] over 36 plea deals, and only 2 trials (not counting cases that are sealed) in front of the" district judge who presided over Murphy's trial, and he evidently contends that the number of pleas versus trial calls into question counsel's competency (ECF No. 91 at 7).   Murphy's contention warrants no discussion, as it clearly does not establish a constitutional violation, much less that counsel was ineffective or, as Murphy alleges, "incompetent."

Murphy is not entitled to relief on any of his ineffective assistance of counsel claims.

<u>Violations of Murphy's Rights by the Department of Homeland Security</u>

In six of Murphy's thirteen grounds for relief—Grounds Three, Four, Six, Seven, Eight, and Eleven—Murphy alleges that agents from the Department of Homeland Security (DHS) violated his constitutional rights during their investigation of this case.   Briefly stated, Murphy alleges that DHS agents failed to

properly execute, serve, and return the search warrants, in violation of the Fourth Amendment and Fed. R. Crim. P. 41; restrained his movement before and after execution of the search warrants, in violation of the Fifth Amendment; failed to follow proper chain of custody procedures, in violation of his right to due process under the Fifth Amendment; and violated his First Amendment right against self-incrimination by using deceptive tactics to acquire the password and PIN to his phone (*see* ECF No. 84).

As discussed above, "[r]elief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'"  *Lynn*, 365 F.3d at 1232.   The "fundamental miscarriage of justice" exception recognized in *Murray v. Carrier*, 477 U.S. 478, 496 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent . . . ."

Murphy did not raise these claims on appeal.   To the extent he could have, the claims are procedurally defaulted, and Murphy has not shown cause for failing to raise the claims on direct appeal and actual prejudice.   *Bousley*, 523 U.S. at 622. To the extent he could not have raised the claims on appeal—or the court allows the

claims to proceed despite Murphy's failure to show cause for the procedural default—the claims nevertheless fail because Murphy has not shown that any of the alleged violations resulted in the conviction of an actually innocent person.   *Mills*, 36 F.3d at 1055.

Likewise, even liberally construing Murphy's claims as alleging ineffective assistance of trial counsel for not raising the issues at or prior to trial, the claims still fail because Murphy cannot demonstrate deficient performance or prejudice based on counsel's failure to raise these claims.

In Ground Three, Murphy alleges "violation of U.S.C. 18 § 3108 [sic] execution, service and return of warrant" (ECF No. 84 at 7).   Murphy contends DHS Agent Bosso and her team violated section 3108 because they did not follow the method and time for execution and service of the warrants as required by Fed. R. Crim. P. 41(c) and (d) (*id*.).   Title 18 U.S.C. § 3108 states in full, "Method and time for execution, service and return of search warrant, Rule 41(c), (d)."   Murphy thus appears to contend that law enforcement failed to comply with the requirements of Rule 41(c) and (d).   These subsections govern "persons or property subject to search or seizure" and "obtaining a warrant," respectively.   Murphy does not explain the nature of the alleged violations of which he complains.   To the extent

Murphy complains about the time the warrants were executed, the warrants required, on their face, that they be executed on or before February 14, 2017, between 6:00 a.m. and 10:00 p.m. (ECF No. 89-1 at 4, 9).   The warrants were executed within that time frame (ECF No. 89-1 at 8), as DHS Agent Lindsey Bosso and Pensacola Police Department Detective Jeff Brown approached Murphy outside his home at approximately 7:25 a.m. on February 6, 2017, and executed the warrants at that time (ECF No. 71 at 96–97).

As the Government notes:

> [U]nless a clear constitutional violation occurs, noncompliance with Rule 41 requires suppression of evidence only where (1) there was 'prejudice' in the sense that the search might not have occurred or would not have been so abrasive if the rule had been followed, or (2) there is evidence of intentional and deliberate disregard of a provision in the Rule.

*United States v. Loyd*, 721 F.2d 331, 333 (11th Cir. 1983) (quoting *United States v. Stefanson*, 648 F.2d 1231 (9th Cir. 1981)).   Murphy has made no such showing. Hence, no relief is warranted.

Murphy's allegation in Ground Four concerns an alleged violation of the requirements of Rule 41 regarding search warrant *returns* (*see* ECF No. 84 at 8 (citing "Rule 41(d)").   Rule 41(d) addresses *obtaining* warrants, so the court presumes Murphy intended to reference Rule 41(f)(1)(D), which requires that the

"officer executing the warrant must promptly return it—together with a copy of the inventory—to the magistrate judge designated on the warrant."    Murphy claims that Agent Bosso and her team deliberately and purposefully avoided following the procedure outlined in the rule.    Not only is Murphy's claim wholly conclusory, but it also is refuted by the record.    As noted *supra*, the search warrant returns are of record in both Case No. 3:17mj10 and Case No. 3:17mj11 (and are attached to the Government's response (*see* ECF No. 89-1)), and the returns demonstrate compliance with Rule 41(f)(1)(D).    *See* Fed. R. Crim. P. 41(f)(1)(d) (eff. Dec. 1, 2016) (requiring that the officer executing the warrant "return it—together with a copy of the inventory—to the magistrate judge designated on the warrant"); *see also* Case No. 3:10mj10 (ECF No. 6 at 1–2); Case No. 3:17mj11 (ECF No. 6 at 1–2); ECF No. 89-1.    No relief is warranted on this claim.

In Ground Six, Murphy asserts another violation of his Fourth Amendment rights, again based on alleged violations of Rule 41 by Agent Bosso and her team (specifically, Fed. R. Crim. P. 41(F)(1)(A), (B) and (C)) (ECF No. 84 at 12).    The subsections of Rule 41 Murphy cites under this ground for relief describe requirements for noting on a warrant the date and time of its execution and preparing an inventory of, and receipt for, the items seized.    Here, Agent Bosso noted the date

of the warrants' execution, but not the time, although the warrant returns, on their

face, reflect that a copy of each warrant and inventory was left with Murphy, as

required (ECF No. 89-1 at 3, 8).    Although Agent Bosso failed to note the time, and

thus technically violated Rule 41, there is no evidence—or reason to believe—that

she intentionally and deliberately disregarded a provision in Rule 41.    Thus, the

technical violation would not have resulted in the suppression of any evidence seized

during execution of the search warrants.    Correspondingly, Murphy was not

prejudiced by counsel's failure to raise the issue.    *See Loyd*, 721 F.2d at 333

(suppression is required under Rule 41 only where (1) there was 'prejudice' in the

sense that the search might not have occurred or would not have been so abrasive if

the rule had been followed, or (2) there is evidence of intentional and deliberate

disregard of a provision in the Rule).

Murphy claims in Ground Seven that his Fifth Amendment rights were

violated when Agent Bosso and her team "physically and verbally restrain[ed his]

movement before serving and after the completion of the search warrant" (ECF No.

84 at 13).    Putting aside the fact that Murphy failed to develop this claim in his

section 2255 motion, the claim is not supported by the testimony at trial.    In his

reply, Murphy adds additional information—namely, that law enforcement advised

him they were going to search his place of employment—a firehouse—and that Murphy could not be present for the search.    There is nothing unusual or unlawful about prohibiting a suspect from being present during a search; such a prohibition reduces the chances of violence/resistance, destruction of evidence, and/or intimidation of witnesses.    And such a prohibition does not even remotely rise to the level of a constitutional violation.

Murphy further asserts in his reply that "Agent Bosso conducted a custodial interrogation . . . without *Miranda* warnings" (ECF No. 91 at 10).    Bosso's testimony about law enforcement's initial encounter with Murphy was that it was a congenial conversation and that she advised Murphy of his *Miranda* rights shortly after advising him of the true reason for their visit, even though he was not under arrest (ECF No. 71 at 96–100).    Murphy's recollection thus appears mistaken, and, in any event, Murphy has not shown any manner in which he was prejudiced by counsel's failure to raise the issue.

In Ground Eight, Murphy claims that "Agent Bosso and team cannot verify or prove proper chain of custody," which violated his due process rights under the Fifth Amendment (ECF No. 84 at 14).    Again, Murphy offers no facts in support

of his claim; as such, he cannot show a violation of his Fifth Amendment rights or ineffectiveness of counsel under the standards set forth in *Strickland*.

Ground Eleven is Murphy's last claim challenging the actions of Agent Bosso and her team (ECF No. 84 at 17).   Murphy asserts that agents violated his Fifth Amendment right not to be a witness against himself with respect to "the deception used to acquire [his] password/pin to [his] phone" (*id*.).   Once again, Murphy's claim fails.   First, the testimony at trial reveals that Agent Bosso did not obtain Murphy's password or PIN for his cellular telephone.   Rather, pursuant to a ruse that law enforcement was investigating a stolen property ring that had to do with pawn shops, Murphy unlocked his phone and handed it to agents (ECF No. 71 at 98, 118–20, 136–37).[8]

Second, deception is not an impermissible law enforcement tool.   For instance, the police are permitted to obtain a confession through deception under the Fifth Amendment.   *See United States v. Spivey*, 861 F.3d at 1213–14 (11th Cir. 2017) (citing *Illinois v. Perkins*, 496 U.S. 292, 297 (1990) ("Ploys to mislead a suspect or lull him into a false sense of security that do not rise to the level of

---

[8] Murphy suggests in his reply that a "Detective Brown" was "possibly manipulating" Murphy's phone (ECF No. 91 at 7, 8).   This comment appears to be a red herring without any basis in fact, as Murphy has never denied participating in the chats at issue in this case.

compulsion or coercion to speak are not within *Miranda*'s concerns."); *see also*
*United States v. Peters*, 153 F.3d 445, 463 (7th Cir. 1998) (Easterbrook, J.,
concurring) ("If a misunderstanding of one's status as a target—misunderstanding
abetted by calculated silence and half-truths from agents and prosecutors—does not
invariably make a statement involuntary, why should it make a disclosure of physical
evidence involuntary?").    The Fourth Amendment also allows some police
deception so long as the suspect's will is not overborne.    *Id.* (citing *Schneckloth v.
Bustamonte*, 412 U.S. 218, 226 (1973)).    Undercover operations do not invalidate
consent, *id.* (citing *Lewis v. United States*, 385 U.S. 206, 206–07 (1966)), and an
individual who interacts with law enforcement undertakes a knowing risk that
officers may discover evidence of criminal behavior.    *Id.* (citation omitted).
Murphy thus cannot show any violation of his constitutional rights under Ground
Eleven, and he is not entitled to relief.

<u>Trial and Evidentiary Errors</u>

Murphy's last four claims—Grounds Nine, Ten, Twelve, and Thirteen—
involve alleged errors pertaining to his prosecution and trial.    Again, the law is well
established that issues which could have been raised on direct appeal are generally
not actionable in a § 2255 motion and will be considered procedurally barred.

*Lynn,* 365 F.3d at 1234–35; *Bousley,* 523 U.S. at 621.    Murphy has not shown cause for failing to raise these issues on appeal, each of which could have been raised, or prejudice resulting from the failure to do so.    *Id.*    Each of his claims thus is procedurally barred.    Even if the court again liberally construes Murphy's motion as alleging counsel was constitutionally ineffective for not raising the four issues at trial, Murphy cannot show a violation of *Strickland* as to any of the claims.    Indeed, counsel is not constitutionally ineffective for failing to raise meritless issues, and because the issues he raises are meritless, he cannot show prejudice.    *See, e.g., Hollis*, 958 F.3d at 1124; *Brownlee*, 306 F.3d at 1066.

In Ground Nine, Murphy contends that the prosecution entered inadmissible anime pictures into evidence in violation of 18 U.S.C. § 2256(9)(A)(i) and (ii) (ECF No. 84 at 15).    Murphy's reliance on the statute is misplaced, as the statute merely defines "identifiable minor."    The statute does not proscribe the admissibility of uncharged evidence, and, in fact, such evidence is admissible.    *See e.g., United States v. Steinmetz*, 900 F.3d 595 (8th Cir. 2018) (holding that admission of "miscellaneous" uncharged child pornography images defendant had in his possession was permissible); *United States v. Hinkel*, 837 F.3d 111 (1st Cir. 2016) (holding that anime images depicting minors engaged in sexual activity with adults

were admissible as relevant to the issue of predisposition).    As the Government notes, it could have charged Murphy with possession of the anime images as a separate felony under 18 U.S.C. § 1466A, which criminalizes obscene visual representations of the sexual abuse of children.    *See, e.g., United States v. Whorley*, 550 F.3d 326 (4th Cir. 2008) (defendant charged with downloading obscene Japanese anime cartoons and other child pornography).

Additionally, defense counsel sought, albeit unsuccessfully, to have the images excluded.    He argued before trial that the anime did not depict child pornography and the images should not be admitted because the prejudicial effect of the evidence would outweigh any substantive value (ECF No. 70 at 5–6).    The court was persuaded by the Government's argument in opposition, that the anime was part of the chat that showed Murphy's intent and kept the conspiracy and relationship going for months (*id.* at 6–7).    The Government conceded Murphy could not be convicted on Counts Two and Three based solely on the anime images because they did not qualify as child pornography under 2252A and because Murphy was charged only with receipt and possession, not distribution (*id.* at 7).    Murphy has not suggested what other arguments counsel could have made that would have changed the court's ruling on the issue.

In Ground Ten, Murphy claims the Government violated "Rule 12(3)(B)(ii) [sic], [by] charging the same offense in more than one count (multiplicity)" (ECF No. 84 at 16).    There is no Fed. R. Crim. P. 12(3)(B)(ii).    It appears, however, that Murphy refers to Rule 12(b)(3)(B)(ii), which states that a motion alleging a defect in the indictment, such as a defect due to "charging the same offense in more than one count (multiplicity)," must be made before trial.    Although Murphy contends he could not have been charged with both receipt and possession of child pornography, the latter of which is a lesser included offense, he is mistaken, and thus counsel had no grounds on which to pursue a motion alleging a defect in the indictment.    Charging a lesser included offense is proper provided the defendant is not sentenced for both violations.    *See United States v. Bobb*, 577 F.3d 1366 (11th Cir. 2009).    As indicated above, the court dismissed Count Three at sentencing, noting it was subsumed into Count Two (ECF No. 73 at 60).    Hence, there is no basis for relief on this ground.

In Ground Twelve, Murphy alleges that the Government failed to prove that Murphy's offense conduct had a nexus to interstate commerce (ECF No. 84 at 18). The basis for this claim is unclear.    With respect to the interstate commerce element, the court instructed the jury as follows:

> A "means or facility of interstate or foreign commerce" includes the internet, a cellular telephone network, and any computerized or electronic communication device.   A person who sends or receives an email or cellular message, or who makes or receives a telephone call using a cellular telephone or a computer, uses a facility or means of interstate or foreign commerce.

(ECF No. 36 at 17–18.)   Murphy's participation in the offense conduct was carried out exclusively though cellular telephone facilities and social media applications used over the internet.   Counsel thus had no viable grounds on which to object to the instruction or otherwise raise an issue, as the Government had clearly met its burden of proof on the interstate commerce element.

Finally, in Ground Thirteen, Murphy claims the prosecution failed to establish the elements of a conspiracy (ECF No. 84 at 19).   The jury instructions set forth the Government's burden of proof and explained the elements of conspiracy, providing in pertinent part as follows:

(1) Two or more persons, in some way or manner, agreed to try to accomplish a common and unlawful plan to receive or attempt to receive material containing child pornography, as charged in Count Two of the indictment or to possess or attempt to possess material containing child pornography, as charged in Count Three of the indictment; and

(2) the Defendant knew the unlawful purpose of the plan and willfully joined in it.

(*Id.* at 21).   The instructions further provided that a conspiracy is "a kind of partnership for criminal purposes" and the "Government does not have to prove that the members of the plan made any kind of formal agreement and the members do not all have to be charged in the indictment" (*id.*)   The evidence at trial clearly established the existence of a conspiracy.   As summarized by the Government, "the entire communication thread was one long unlawful agreement to share, receive and possess child pornography in violation of the law" (ECF No. 89 at 17).   Counsel therefore was not constitutionally ineffective for failing to raise the issue, and there is no basis for relief.

## CONCLUSION

For all the foregoing reasons, the court finds that Murphy has failed to show that any of the claims raised in his motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 have merit.   Nor has he shown that an evidentiary hearing is warranted.   Therefore, Murphy's motion should be denied in its entirety.

## Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2255 Proceedings provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued, "the court must

state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2255 Cases.

After review of the record, the court finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, it is also recommended that the court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Based on the foregoing, it is respectfully **RECOMMENDED** that:

1. The "Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence" (ECF No. 84) be **DENIED**.

2. A certificate of appealability be **DENIED**.

Case Nos.: 3:17cr29/MCR/EMT; 3:19cv3832/MCR/EMT

At Pensacola, Florida, this 14<u>th</u> day of February 2022.


*/s/ Elizabeth M. Timothy*_____
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**


### <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations must be filed within fourteen days of the date of the Report and Recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u> An objecting party must serve a copy of its objections on all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**